[Cite as *Harbor Park Marina Assn. v. Harbor Park Marina, Inc.*, 2016-Ohio-8378.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Harbor Park Marina Association                    Court of Appeals No. OT-16-007

    Appellant                                        Trial Court No. 12CV554

v.

Harbor Park Marina, Inc.                          **DECISION AND JUDGMENT**

    Appellee                                         Decided:  December 23, 2016

* * * * *

John A. Coppeler, for appellant.

Linda Kroeger-Baum, for appellee.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

{¶ 1} This is an appeal following a bench trial before the Ottawa County Court of Common Pleas, wherein the court denied appellant's, Harbor Park Marina Association, claim for unpaid road maintenance assessments and awarded appellee, Harbor Park Marina, Inc., the sum of $22,684.32 in overpayments.

## A. Facts and Procedural Background

{¶ 2} This matter involves the assessment of costs to maintain seven private roadways running throughout the Harbor Park Marina Subdivision, which is located in Catawba Island Township. The roadways are owned by appellee and maintained by appellant. Appellee also owns and operates a marina adjacent to the subdivision, which is accessible from State Route 53 via Marina Avenue. Along with the marina and the subdivision, Marina Avenue services residents of three nearby condominium developments.

{¶ 3} In 1977, a dispute arose between appellee and the owners of lots in the subdivision as to whether road maintenance was necessary and how the cost of such maintenance would be allocated.[1] At the time, the roads were unpaved and the cost of maintenance was fairly low. After the parties failed to come to an agreement regarding road maintenance, the dispute came before the trial court, which ordered appellee to pay "an equitable portion of the maintenance of any roads or rights of way used whether said development is residential, marina, commercial or any other type." Thereafter, appellee and appellant agreed that it would be equitable to convert each dock within appellee's marina into a lot for purposes of road maintenance assessments, and then assess each dock 15 percent of the costs of road maintenance typically assessed to a lot owner within the subdivision.

---

[1] The property on which the condominiums currently stand was undeveloped at the time and was owned by appellee.

2.

**{¶ 4}** Nine years later, appellee sold a portion of its undeveloped land to R.B. Chase, the developer of Come Sail Away Condominiums. A provision within the deed granted R.B. Chase a 30 foot right-of-way and easement along Marina Avenue. The deed further obligated R.B. Chase to "pay one-half the cost of maintaining [Marina Avenue]."

**{¶ 5}** Over the next several years, appellee developed Marina Club 38 Condominium, and sold a small tract of land adjacent to Come Sail Away Condominium for a private residence. At some point thereafter, Come Sail Away stopped paying its share of the maintenance costs for Marina Avenue, prompting the filing of a second lawsuit with the trial court in 2004.

**{¶ 6}** In the second lawsuit, Come Sail Away argued that its 50 percent responsibility for the maintenance costs of Marina Avenue should have been shared with Marina Club 38 and the private residence pursuant to the trial court's prior order in the first lawsuit. The court disagreed, finding that Come Sail Away was solely responsible for 50 percent of the cost of Marina Avenue as set forth in the deed transferring ownership of the property from appellee to R.B. Chase. In its decision, the trial court also ordered appellee to pay appellant a "prorata share of any future maintenance cost of Marina Avenue for properties using Marina Avenue not platted as part of the subdivision, said share to be determined in accordance with the past practice and agreement * * *."

**{¶ 7}** Following the trial court's issuance of its decision in the 2004 lawsuit, appellant continued to bill appellee for 15 percent of the cost of all road maintenance within the subdivision, including Marina Avenue as well as the remaining six roads

3.

therein. Appellee paid the assessments for several years. However, beginning in 2010, appellee refused to pay the assessments billed by appellant, reasoning that it was not equitable to require appellee to pay a share of the costs to maintain all of the roads since the marina only utilized Marina Avenue for ingress and egress. Further, appellee took issue with the inclusion of appellant's administrative costs in the assessments.

{¶ 8} As a result of appellee's failure to pay, appellant filed a complaint with the trial court on October 30, 2012, seeking to recover the unpaid assessments totaling $10,200 plus interest. Appellee filed a timely answer and counterclaim, in which appellee admitted its failure to pay the assessments since 2010, but alleged that appellant had "billed [appellee] for costs beyond [appellee's] equitable share for road maintenance." Further, appellee requested reimbursement of its alleged overpayments made to appellant.

{¶ 9} The matter proceeded through pretrial and discovery, and eventually made its way to a trial before the court. Following trial, the court found that appellee was only required to pay road maintenance costs for Marina Avenue. The court also held that road maintenance costs should not include administrative expenses. Further, the court found that "the formula used to calculate road maintenance shall be the formula previously used by the parties, to wit: 15% of the Association's annual lot assessment to individual lot owners." Finally, the court granted judgment in favor of appellee on its counterclaim for previous overpayments to appellant, thereby ordering appellant to pay appellee the sum of $22,684.32. It is from this order that appellant timely appeals.

4.

## B. Assignments of Error

{¶ 10} On appeal, appellant asserts the following assignments of error:

1. The Trial Court erred in entering judgment in favor of defendant-appellee on plaintiff-appellant's complaint to collect unpaid road maintenance assessments from 2011-2012 which were based on a formula the parties had agreed on and followed throughout the years after an October 3, 1977 court decision.

2. The Trial Court erred in limiting defendant-appellee's contributions to maintenance costs to just one road when it owns and uses all seven of the roads, and in excluding administrative costs and an amount for a reserve fund from the calculation of road maintenance expenses for which defendant-appellee is liable.

3. The Trial Court erred in entering judgment in favor of defendant-appellee on its counterclaim against plaintiff-appellant for an amount by which defendant-appellee had allegedly overpaid road maintenance fees.

{¶ 11} Because appellant's assignments of error are interrelated, each asserting that the trial court's judgment was against the manifest weight of the evidence, we will address them simultaneously.

## II. Analysis

{¶ 12} As indicated above, appellant's assignments of error challenge the trial court's decision as being against the manifest weight of the evidence. When reviewing a

5.

decision in a civil case for being against the manifest weight of the evidence, we apply the same standard used in criminal cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-23. That is, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In weighing the evidence, we must be mindful of the presumption in favor of the finder of fact:

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment. *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

{¶ 13} Here, appellant argues that the trial court erred in granting judgment in favor of appellee on appellant's claim for unpaid road maintenance assessments and appellee's counterclaim for reimbursement of its overpayments. More specifically, appellant takes issue with the trial court's conclusion that appellee should only be

6.

responsible to contribute to the costs to maintain Marina Avenue, and not the remaining six roads within the subdivision.

{¶ 14} At trial, the owner of appellee, Tom Corogin, acknowledged that the 15 percent formula that was agreed upon following the 1977 court decision initially applied to all roads within the subdivision. However, Corogin testified that the application of the formula to all roads has since become inequitable in light of the expansive development within the subdivision and the corresponding rise in maintenance costs. This testimony was corroborated by appellant's witnesses, who testified that appellant's assessments cover far more than simply paving and maintaining the roads. In fact, the income generated from the assessments is also used to fund a "reserve fund" that is primarily used to pay for the cost of dredging, maintain the channels in the subdivision, and pay "gratuities" to appellant's officers, among other things. Corogin noted that the budget was much simpler in 1977 when the roads were unpaved and the land was largely undeveloped.

{¶ 15} While Corogin agreed that the formula remains equitable as it relates to the maintenance costs for Marina Avenue, he insisted that it would not be equitable to apply the formula to the remaining roads because Marina Avenue is the only road used by customers to access appellee's marina. Indeed, it is clear upon examination of the layout of the roads within the subdivision that Marina Avenue is the only road that must be traversed in order to access the marina from State Route 53. Corogin went on to state

7.

that he only uses the other roads within the subdivision in order to deliver boats to residents of the subdivision at the residents' request.

{¶ 16} In its 1977 decision, the trial court ordered appellee to pay an equitable portion of the road maintenance costs for roads used. In light of the testimony presented at trial, which demonstrates a change of circumstances and the fact that appellee's use of the roads within the subdivision is largely limited to Marina Avenue, we find that the trial court's decision to limit appellee's responsibility to contribute to road maintenance costs to Marina Avenue was not against the manifest weight of the evidence.

{¶ 17} Next, appellant challenges the trial court's exclusion of administrative expenses from the calculation of appellee's road maintenance obligations. Relevant to this argument, the testimony at trial revealed that appellant's expenses included a range of costs not directly related to maintaining the roads. Appellant's president, John Choban, testified that these expenses include "electric bills, legal bills, computer costs, postage, the annual meeting, the cost of the annual meeting, * * * mailbox [expenses]." Further, appellant pays its officers gratuities in the sum of $7,000 per year. Appellant argues that appellee should be responsible for a portion of these costs because "there must be someone's involvement to determine what maintenance or repaving is needed, what other work must be done, who the appropriate providers of needed services will be, how to pay them, and how to determine assessments, bill responsible parties, and collect those assessments." Appellant goes on to argue that it would be inequitable to force

8.

appellant and its members to be solely responsible for administrative expenses, some of which relate to the maintenance of Marina Avenue.

{¶ 18} Upon consideration, we find that appellant has misinterpreted the trial court's decision. Under appellant's interpretation, appellee would not be responsible to share in any of the aforementioned costs. However, the court stated in its entry that "road maintenance shall include items as listed on Defendant's Exhibit O except 'administrative fees.'" Upon review of Defendant's Exhibit O, it is clear that the "administrative fees" pertain to the officers' gratuities, not the other costs listed above. Because the officers' gratuities have nothing to do with the maintenance costs for Marina Avenue, we find that the trial court's decision to exclude them from appellee's portion of road maintenance expenses was not against the manifest weight of the evidence.

{¶ 19} Finally, appellant argues that the trial court erred in its adoption of appellee's calculation of overpayments it made to appellant from 2005 through 2012. Appellee, in its written closing argument that was adopted by the trial court, calculated the amount of its overpayments to appellant. Appellee began by converting its docks into lots by multiplying the number of docks (153) times 15 percent, resulting in a total of 23 "lot equivalents." Adding this number to the number of lots using Marina Avenue (120), appellee arrived at a total number of lots that would share in the cost to maintain Marina Avenue. After adding the maintenance costs for the applicable years, appellee

9.

determined that the total maintenance cost was $23,334.97.[2] Appellee then divided this number by the total number of lots in order to arrive at a total cost per lot. Finally, appellee multiplied the total cost per lot by 23 (the number of appellee's lot equivalents), resulting in a total of $3,753.18 in maintenance costs for Marina Avenue attributable to appellee. Since 2005, appellee has paid appellant $26,437.50. Therefore, appellee calculated that it overpaid appellant in the amount of $22,684.32.

{¶ 20} Appellant challenges appellee's calculation of overpayments, arguing that the calculations are based on a "new formula." Having reviewed appellee's calculations, we disagree with appellant's assertion that the calculations use a new formula. Instead, it is clear that appellee applied the 15 percent formula to the maintenance costs for Marina Avenue in accordance with longstanding practice. The only difference between the formula applied here and the formula as it has traditionally been applied lies in the fact that the trial court has now made it clear that the 15 percent figure should only be applied to the maintenance costs for Marina Avenue, and not the maintenance costs for all subdivision roads. Having already concluded that the trial court's limitation of appellee's responsibility to Marina Avenue was not against the manifest weight of the evidence, we find that the trial court's adoption of appellee's calculation of overpayments was also not against the manifest weight of the evidence.

{¶ 21} Accordingly, appellant's assignments of error are not well-taken.

---

[2] Appellee was able to extrapolate the total maintenance costs for Marina Avenue by referring to the amount billed to Come Sail Away, which was equivalent to half of the total maintenance cost for Marina Avenue pursuant to the 2004 court order.

10.

## III. Conclusion

**{¶ 22}** For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                                 _____

                                                             JUDGE

Stephen A. Yarbrough, J.

                                                   _____

James D. Jensen, P.J.                                     JUDGE
CONCUR.

                                                             _____

                                                             JUDGE